UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN WAKSMUNDSKI, | : | Case No. 1:16-cv-413 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| CRYSTAL L. WILLIAMS, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 24)**

This civil action is before the Court on Defendants' motion to dismiss (Doc. 24)[1] and the parties' responsive memoranda (Docs. 25, 26).

## I.   FACTS <u>AS ALLEGED</u> BY THE PLAINTIFF

For purposes of this motion to dismiss, the Court must: (1) view the complaint in the light most favorable to Plaintiff; and (2) take all well-pleaded factual allegations as true. *Tackett v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

In 1986, Plaintiff began attending Xavier University ("XU"), but in 1987, he enlisted in the United States Marine Corp Reserves, attending boot camp from October – December 1987. (Doc. 3 at ¶ 4.3).

In 1988, Plaintiff resumed his education at XU and graduated in December 1990. (Doc. 3 at ¶ 4.4). One day after he graduated, Plaintiff was activated for Desert Shield-

---

[1] This civil action was originally filed in the Middle District of Tennessee and the motion was initially filed as a motion to dismiss or stay or alternatively to transfer venue. Judge Nixon in the Middle District of Tennessee enforced the Forum Selection Clause and transferred the case to this Court, but did not address the motion to dismiss or stay. (*See* Doc. 36).

Desert Storm. (*Id.*) Plaintiff served in the United States Marine Corp Reserves for six years (1987–93) and received an Honorable Discharge in August of 1995. (*Id.* at ¶ 4.5).

In or about January 2003, Plaintiff began receiving medical care, which included psychological counseling, at the Cincinnati VA Hospital. (Doc. 3 at ¶ 4.6).

In late summer or early fall 2007, Plaintiff was contacted by the VA Hospital suggesting that he should come in for treatment. (Doc. 3 at ¶ 4.7). Plaintiff responded and began receiving all of his health care at the Cincinnati VA. He started receiving counseling from a social worker for approximately six months, but was then transferred to the care of Defendant Crystal L. Williams ("Dr. Williams"). (*Id.*)

Plaintiff counseled with Dr. Williams once a week for a number of years and benefited from those sessions. (Doc. 3 at ¶ 4.8). In spite of his military service and education, Plaintiff's family history and other life experiences burdened him with depression and anxiety. (*Id.*) Plaintiff also had significant issues in trusting other people. (*Id.*) Dr. Williams once told Plaintiff that he was one of the most severe cases she had ever encountered with respect to anxiety and mistrust. (*Id.*) The counseling with Dr. Williams went on for several years before Plaintiff fully "opened up." (*Id.*)

During a group therapy session with other male veterans in late 2013 or early 2014, the topics of homosexuality, gays in the military, and gay marriage were discussed. (Doc. 3 at ¶¶ 4.11, 4.12). Plaintiff expressed his opposition to gays in the military and gay marriage, statements firmly grounded in his beliefs as a Roman Catholic. (*Id.*, at

2

4.12)  Plaintiff later discovered that he was falsely accused by Defendants and/or others at the VA hospital of distributing "anti-gay" literature.  (*Id.*)

In the weeks and months that followed, Dr. Williams—whom Plaintiff alleges "favors Homosexual rights and has pro-gay symbols posted in her office"—expressed her disapproval of Plaintiff's views as he stated them during the group meetings and treated him with an increased hostility.  (Doc. 3 at ¶ 4.12).  Dr. Williams denied Plaintiff participation in a new therapy group that she intended to form in February 2014, a decision that was contrary to her previous promises that Plaintiff would be a welcome participant in the new group.  (*Id.*)

On March 25, 2014, Dr. Williams informed Plaintiff that she would no longer serve as his counselor and would not refer him for treatment by any of her colleagues at the VA Hospital.  (Doc. 3 at ¶ 4.13).  Plaintiff reacted to this news by entering into what appeared to be a catatonic state, refusing to talk or answer questions for a prolonged period of time.  (*Id.*)  Plaintiff was transported to the VA Hospital Emergency room but eventually returned to normal and responsive behavior and elected to go home.  (*Id.*)

As a direct and proximate result of the actual and perceived denial of care by the Defendants, Plaintiff fell into a deep isolation and depression with a level of anxiety that left him essentially non-functional.  (Doc. 3 at ¶ 4.14).  He essentially ignored subsequent contacts from the Defendants and others at the VA Hospital, unable to trust their motives and plans for him.  (*Id.*)

Defendants Sloan and Barrett were directly involved with Defendant Williams in Plaintiff's care and in the denial of care, having been advised of the decisions and provided with the related medical records. (Doc. 3 at ¶ 4.15). Plaintiff was participating in another weekly group meeting under Defendant Sloan's supervision during that same period, and Defendants Sloan and Williams were actively collaborating in decisions about Plaintiff's care. (*Id*.) Plaintiff believes that Defendant Williams could not have terminated his care without the approval of Defendant Barrett. (*Id*.)

As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff lived for two years without needed psychological treatment, group counseling, and medications that were beneficial and necessary for his proper functioning. (Doc. 3 at ¶ 4.17). Plaintiff claims that he was humiliated, became isolated, lost hope, and otherwise suffered extreme emotional distress that affects him up to the present time and will likely continue into the foreseeable future. (*Id.* at ¶ 4.18).

Plaintiff filed this lawsuit alleging that Defendants failed to provide psychological care and counseling to which Plaintiff was entitled in violation of the First Amendment (speech and religion) and the Fourteenth Amendment (equal protection) of the United States Constitution.[2] Plaintiff seeks damages for these alleged constitutional violations from Defendants—individuals employed by the VA—in their individual capacity. (*Id.* at 9).

---

[2] Plaintiff has stipulated to a dismissal of his fourth claim for intentional infliction of emotional distress. (Doc. 25 at 5).

4

Defendants maintain that the Complaint should be dismissed for failure to state a claim because Plaintiff does not have a remedy for damages against individual employees of the VA. (Doc. 24 at 12-16). Defendants also argue the Complaint should be dismissed for lack of subject matter jurisdiction because (1) Plaintiff's claims are preempted by the Veterans' Judicial Review Act ("VJRA"); and (2) Plaintiff failed to exhaust his administrative remedies. (*Id.* at 8-12).

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing

5

*Papasan v. Allain*, 478 U.S. 265 (1986)).  Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id*.

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed.  *Id*. (*citing* Fed. Rule Civ. P. 8(a)(2)).

**B.   Rule 12(b)(1).**

There are generally two types of motions challenging subject matter jurisdiction under Rule 12(b)(1).  *DLX, INc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).  A Rule 12(b)(1) motion can attack a party's claim of jurisdiction on its face or the motion can attack the factual basis for a claim of jurisdiction.  *Id*.  A facial attack questions the sufficiency of the pleading.  *Campbell v. Miller*, 835 F. Supp.2d 458, 463 (S.D. Ohio 2011).  When reviewing this type of challenge to the court's jurisdiction, the court must

take the allegations in the complaint as true and construe the complaint in a light most favorable to the non-moving party. *Id*.

When a factual challenge is made under Rule 12(b)(1), the court considers evidence to determine if jurisdiction exists. *Campbell*, 835 F.Supp.2d at 463-64. The trial court must weigh the conflicting evidence to make this determination. *Id*. When a factual attack is made, the non-moving party bears the burden of proving that jurisdiction exists. *Id*. In such a case, there is no presumption of truthfulness on behalf of the non-moving party. *Id*.

### III.  ANALYSIS

#### A. The Complaint fails to state a claim upon which relief can be granted.

Plaintiff claims the Defendants denied him psychological care and counseling to which he was entitled because of his political and religious views on gay marriage and gays in the military. Plaintiff asserts three causes of action premised on this conduct: retaliation in violation of the First and Fourteenth Amendments, violation of the First Amendment's "free exercise" clause, and violation of the Fourteenth Amendment's "equal protection" clause.

Defendants claim that Plaintiff does not have a right of action against individual employees of the VA for damages. (Doc. 24 at 12-16). For the reasons that follow, this Court agrees.

### 1. *Bivens* **and its progeny.**

There is no statutory right of action (or remedy for damages) available against federal employees for violating a party's First and/or Fourteenth Amendment rights. However, a federal court's authority to imply constitutional torts not expressly authorized by statute is anchored in its general jurisdiction to decide all cases "arising under the Constitution, laws, or treatises of the United States." *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (quoting 28 U.S.C. § 1331).

The Supreme Court of the United States first exercised this authority in *Bivens v. Six Unknown Federal Narcotic Agents*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court recognized a limited, implied cause of action against federal employees for particularly egregious violations of the Fourth Amendment in an unlawful search and seizure case brought by a private citizen. 403 U.S. at 390. Though no federal statute authorized such a cause of action, the Supreme Court awarded a judicially-created damages remedy on the grounds that the plaintiff would otherwise be without any remedy for the unconstitutional invasion of his rights. *Id.*

Two factors were important in the Supreme Court's analysis. First, there were "no special factors counseling hesitation in the absence of affirmative action by Congress." *Id.*, at 396. Second, there was "no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money

8

damages, but must instead by remitted to another remedy, equally effective in the views of Congress." *Id.*, at 397.

Since *Bivens*, the Supreme Court has recognized implied remedies for damages against individual federal employees who abuse their constitutional authority in two situations. In *Davis v. Passman,* 442 U.S. 228 (1979), the Supreme Court held that a female secretary who had been discharged from her employment by a United States Congressman could bring an action for damages under the Fifth Amendment for sexual discrimination. *See Thomas v. Shipka*, 818 F.2d 496, 500 (6th Cir. 1987). In *Carlson v. Green*, 446 U.S. 14 (1980), the Supreme Court held that federal prison officials could be liable for damages in an action brought directly under the Eighth Amendment for failure to provide proper medical attention to a prisoner. *Id.*

Since *Green*, the Supreme Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Malesko*, 534 U.S. at 68.

### 2. Statutory remedial schemes are a "special factor" counseling hesitation.

The Supreme Court's reference in *Bivens* to "special factors counselling hesitation in the absence of affirmative action by Congress" has proved to include judicial deference to indications that congressional inaction has not been inadvertent. *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988). Accordingly, when the design of a government program suggests that Congress believes that it has provided adequate remedial

9

mechanisms for constitutional violations that may occur over the course of its administration, the Supreme Court has not created additional *Bivens* remedies. *Id.*

For example, the Supreme Court declined to create a *Bivens* remedy for a First Amendment violation arising out of an employment relationship governed by the Civil Service Commission regulations. *Bush v. Lucas,* 462 U.S. 367, 368 (1983). In *Bush*, a NASA employee claimed he was demoted for publicly criticizing the agency. He was reinstated through the administrative process but was not permitted to recover damages against an individual director for emotional distress, mental anguish or attorney's fees. *Id.*, at 371,372, and nn. 8-9. The Supreme Court refused to create a *Bivens* remedy even though it assumed a First Amendment violation and acknowledged the existing remedies did not provide "complete relief" to the plaintiff. *Id.*, at 388. The Supreme Court reasoned that the relationship between employer and employee was already covered by the Civil Service Commission regulations, an "elaborate remedial system that has been constructed, step by step, with careful attention to conflicting policy considerations," and those regulations should not be augmented by a judicially-created remedy for damages. *Id.*

Similarly, in *Chilicky,* the Supreme Court declined to allow a *Bivens* claim for damages against individual government employees alleged to have violated due process in their handling of Social Security applications. The Supreme Court explained that Congress had already created "elaborate administrative remedies" available to claimants

10

like the plaintiff. *Chilicky*, 487 U.S. 412, 426. While those remedies did not include a claim for damages against individual federal employees, the Supreme Court refused to create one when Congress—which was better situated to decide whether such a remedy would serve the public interest—did not. *Id.*, at 425.

Courts have concluded that the clear purpose of *Chilicky* and related cases is to virtually prohibit intrusion by the courts into the statutory schemes established by Congress. *See Hicks v. Brown*, 929 F. Supp. 1184, 1187 (E.D. Ark. 1996).

### 3. The VJRA is a remedial statutory scheme that precludes a *Bivens* claim.

Relevant to this matter, in 1988 Congress created the VJRA, which provides several layers of administrative review for the adjudication of veterans' benefits claims:

> 38 USC § 511 states that the "Secretary [of the VA] shall decide all questions of law and fact" concerning the provision of veterans benefits. Appeals from such decisions can be taken to the Court of Veterans Appeals ("CVA"). 38 U.S.C. § 511(b)(4); *id.* § 7252(a). In turn, appeals from the CVA can be taken to the Federal Circuit Court of Appeals. *Id.* § 7252(c); *id.* § 7292. From there, the claim may be appealed to the Supreme Court. *Id.* § 7292(c).

*Wojton v. United States*, 199 F. Supp. 2d 722, 730 (S.D. Ohio 2002) (Rice, J).

Federal courts which have considered the issue have repeatedly held the VJRA is a comprehensive remedial scheme that precludes *Bivens* claims for damages against VA employees premised on the assertion that the employees denied, or interfered, with a party's benefits. *See Zuspann v. Brown,* 60 F. 3d 1156 (5th Cir. 1995) (holding "no *Bivens* remedy exists against VA employees") (citing *Sugure v. Derwinski*, 26 F.3d 8, 12-

11

13 (2d Cir. 1994)); *Thomas v. Principi*, 394 F.3d 970, 975-76 (D. D.C. 2005) (holding a *Bivens* action is not available "against VA employees for constitutional torts in the context of a dispute over veterans' benefits"); *Delaforieititi v. Goff,* No. C 98-1329 FMS, 1998 U.S. Dist. LEXIS 14999 **6-8 (N.D. Cal. Sept. 23, 1998) (holding an African American plaintiff who alleged a VA doctor refused to perform a bone graft operation because of her race did not have a *Bivens* claim against that doctor for damages "in light of plaintiff's ability to pursue her claims through the VJRA's remedial structure"); *Hicks v. Small*, 842 F. Supp. 407, 411 (D. Nev. 1993), *aff'd*, 69 F. 3d 967 (9th Cir. 1995) (a plaintiff may not state a *Bivens* claim against members of the VA because Congress "created a comprehensive remedial structure for correcting and vindicating wrongful actions of the Veterans Administration" and "[w]e cannot say that any failure to provide for the relief sought by Plaintiff was inadvertent").

    Here, Plaintiff seeks damages against individual VA employees for allegedly denying him benefits in violation of his constitutional rights. The Supreme Court has not recognized such a cause of action. Given the Supreme Court's direction that the judiciary should not augment Congress's established remedial schemes, and the fact that federal courts have consistently applied this reasoning in refusing to augment the VJRA with a *Bivens* claim against individual VA employees, this Court agrees that the Plaintiff does not have a claim against the Defendants for the relief sought.

### B. This Court lacks subject matter jurisdiction.

Defendants argue that this Court is without subject matter jurisdiction because the VJRA preempts Plaintiff's claims. (Doc. 24 at 9-12). Again, this Court agrees.

The VJRA provides:

> The secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans . . . [T]he decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511(a).

Courts have repeatedly held that Section 511(a) precludes federal district court jurisdiction over claims by veterans regarding deprivation of benefits, including claims for constitutional violations. *See Bush v. United States*, No. 1:13-cv-587, 2013 U.S. Dist. LEXIS 151055 **13-15 (Sept. 17, 2013) (Bowman, M.J.) (the VJRA precludes district courts from adjudicating claims which require the court to determine whether the VA acted properly in the provision of benefits), *adopted*, 2013 U.S. Dist. LEXIS 150917 (S.D. Ohio, Oct. 21, 2013); *Beamon v Brown*, 125 F.3d 965, 970-73 (6th Cir. 1997) (district court properly dismissed veterans' constitutional challenges to VA's procedures for processing claims because "Congress intended to preclude district court jurisdiction over VA decisions relating to benefits claims, including decisions of constitutional issues"); *Thompson v. Veterans Admin*, 20 Fed. App'x. 367, 368-69 (6th Cir. 2001)

13

(district court properly held it lacked subject matter jurisdiction over plaintiff veteran's claim that VA filed false and fraudulent medical records in the plaintiff's administrative appeal because "511(a) precludes district courts from reviewing decisions on veterans' benefits, including constitutional challenges to the department's procedures; such challenges must be filed in the Court of Veterans Appeals and from there are reviewable by the Federal Circuit Court"); *Zuspan v. Brown*, 60 F.3d 1156, 1158-60 (5th Cir. 1995) (affirming district court's dismissal of veteran's claim that VA denied him medical treatment in violation of the Fifth Amendment's due process clause because "Congress has set up an exclusive review procedure for decisions involving veterans benefits determinations"); *Hicks v. Veterans Admin*, 961 F.2d 1367, 1369-70 (8th Cir. 1992) (holding plaintiff's constitutional challenge to a reduction of his benefits is "encompassed by 38 U.S.C. § 511 and is not reviewable in any manner other than by the review mechanism set forth in Chapter 72 of Title 38").

Here, the relevant question is whether adjudication of the claims would require the district court to determine whether the VA acted properly in denying the plaintiff a veterans' benefit; if so, the claim is precluded by § 511(a). *See Price v. United States*, 228 F.3d 240, 421 (D.C. Cir. 2001) (holding §511(a) deprived a district court of jurisdiction over plaintiff's claim "that the VA unjustifiably denied him a veteran's benefit"); *Hicks v. Small*, 842 F. Supp. 407, 413 (D. Nev. 1993).

In *Hicks*, for example, the plaintiff, a veteran, alleged that Small, a doctor at the Reno, Nevada, VA Medical Center, reduced his benefits in retaliation for his complaints about treatment in violation of his First Amendment rights. 842 F. Supp. 407 at 408. Just like the Plaintiff in this action, Hicks asserted that Small's "retaliatory actions deprived [Hicks] of benefits to which he was entitled." *Id.*, at 413. The District of Nevada held Hicks' claims were preempted by § 511(a) because "[i]n order for this court to proceed with this action it would be necessary to consider issues of law and fact involving the decision to reduce Plaintiff's benefits." *Id*.

Plaintiff cites *Anestis v. United States*, 749 F.3d 520 (6th Cir. 2014) for the proposition that § 511(a) does not apply to the claims in this case because Plaintiff is not challenging a benefits determination. (Doc. 25, at 7-8). This Court does not agree.

In *Anestis*, the widow of former marine Cameron Anestis sued the VA in the Eastern District of Kentucky alleging that the VA committed medical malpractice in turning Cameron away from VA clinics shortly before he committed suicide. 749 F.3d at 522. Mrs. Anestis did not argue that Cameron was eligible for VA benefits, she argued that the VA violated standards of medical care and its own policies by refusing treatment when Cameron presented himself at VA facilities in a state of emergency. *Id.*, at 527. The district court granted the VA's motion to dismiss for lack of subject matter jurisdiction. On appeal, the Sixth Circuit held Mrs. Anestis' claim was not precluded by §511(a) because it was premised on the VA's duty to provide emergency care <u>regardless</u>

15

of Cameron's status as a veteran, and accordingly was "wholly unrelated to any benefits determination." *Id.*, at 527.

Significantly, the Sixth Circuit relied on the fact that Mrs. Anestis did not allege "that the VA denied [Cameron] benefits to which he would have been entitled[.]" *Id.* However, that is precisely what the Plaintiff asserts in this action.

Here, each of Plaintiff's claims assert that Defendants denied him "care and counseling to which he was entitled." Doc. 3, ¶¶ 5.2, 6.2, 7.2. Adjudication of these claims necessarily requires a determination of what benefits Plaintiff was entitled to receive. *See Hicks,* 842 F. Supp. 407 at 413. This Court is precluded from answering that question. 38 U.S.C. § 511(a); *Price*, 228 F.3d at 421. Accordingly, this Court lacks subject matter jurisdiction over this action.[3]

### IV.  CONCLUSION

For these reasons, Defendants' motion to dismiss (Doc. 24) is **GRANTED.**

**IT IS SO ORDERED**.

Date:      2/27/17                                                              _____
                                                                                        Timothy S. Black
                                                                                        United States District Judge

---

[3] As this Court holds that it lacks subject matter jurisdiction due to the VJRA's broad preclusion of judicial review, this Court need not reach the merits of Plaintiff's alternative argument that the Court lacks subject matter jurisdiction due to the Plaintiff's failure to exhaust administrative remedies under the Federal Tort Claims Act. (Doc. 24, 7-9).